**ANDRX PHARMACEUTICALS, INC.,**
Plaintiff/Counter–Defendant,

v.

**BIOVAIL CORPORATION,**
Defendant/Counter–Plaintiff,

**Tommy G. Thompson, Secretary, U.S. Department of Health and Human Services, Bernard A. Schwetz, Acting Principal Deputy Commissioner, U.S. Food and Drug Administration, and U.S. Food and Drug Administration, Additional Defendants.**

Biovail Laboratories, Inc.,
Plaintiff/Counter–Defendant,

v.

Andrx Pharmacueticals, Inc.,
Defendant/Counter–Plaintiff,

v.

Biovail Corporation, Counter–Defendant.

Nos. 01CV6548, 01CV6194.

United States District Court, S.D. Florida.

Sept. 19, 2001.

Eric David Isicoff, James Alan Weinkle, Isicoff Ragatz & Koenigsberg, Miami, FL, Louis M. Solomon, Hal S. Shaftel, Colin A. Underwood, Jennifer R. Scullion, Teresa A. Gonsalves, Solomon Zauderer Ellenhorn, Frischer & Sharp, New York, NY, for Andrx Pharmaceuticals, Inc.

Matthew Henry Triggs, Mary F. April, Proskauer Rose, Boca Raton, FL, Charles Krikorian, Sale & Kuehne, Miami, FL, Nancy Kilson, Michael A. Cardozo, Ronald S. Rauchberg, Francis Landrey, Robert A. Cohen, Mercella Ballard, Michelle R. Migdon, Proskauer Rose Goetz & Mendelsohn, New York, NY, Alec W. Farr, Proskauer Rose Goetz & Mendelsohn LLP, Washington, DC, for Biovail Corp.

Andrew E. Clark, U.S. Dept. of Justice, Office of Consumer Lit., Washington, DC, for U.S. Dept. of Health & Human Services, U.S. Food and Drug Admin., Bernard A. Schwetz.

## OMNIBUS ORDER

DIMITROULEAS, District Judge.

THIS CAUSE is before the Court upon Andrx's Motion for Partial Summary Judgment [DE 7] on Count I of the Complaint; the Federal Defendants' Motion to Dismiss the Complaint [DE 30] and Motion to Dismiss the Amended Complaint [DE 86]; Biovail's Motion to Dismiss the Amended Complaint [DE 88], Andrx's Motion for summary judgment declaring 30–month stay inapplicable [DE 98], Andrx's Motion to Strike or Dismiss Counterclaim [under seal at DE 151–153], Biovail's Motion to Consolidate [DE 207], Andrx's Motion to Bifurcate and to Stay [DE 208], Andrx's Motion for partial summary judgment on grounds of non-infringement [DE 13 in Case No. 01–6548], Biovail's Motion to Dismiss Counterclaim [DE 27 in Case No. 01–6548], and various other motions for oral argument, to exceed page limitations, and for pro hac vice admission, all listed in the conclusion below. The Court has carefully considered the motions, as well as the attached declarations and affidavits, and is otherwise fully advised in the premises.

## I. BACKGROUND

Andrx, a generic drug manufacturer, filed this action seeking declaratory and injunctive relief[1] under the federal Food, Drug and Cosmetics Act ("FDCA"), the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), the Sherman/Clayton Antitrust Act, and Florida common law claims for tortious interference with business relationships and negligence *per se*. Andrx seeks in this lawsuit a declaratory judgment that its generic drug does not infringe the 463 patent (and/or that the 463 patent is invalid), and a shortening of the statutory waiting period given to patent holders claiming approved drugs under the FDCA before generic competitors may enter the market. Finally, Andrx seeks damages from Biovail for restraint of trade in obtaining the license of the 463 patent for the purpose of blocking Andrx's generic drug from receiving FDA approval.

Biovail currently markets a patented drug, Tiazac, as a once-a-day drug for hypertension and angina. In June, 1998, Andrx filed an Abbreviated New Drug Application ("ANDA") with the FDA for a generic version of Tiazac. Under the statutory scheme established by Congress in the FDCA, in October, 1998, Biovail sued Andrx in this Court for patent infringement, arguing Andrx's generic drug violated the 791 patent obtained by Biovail. After a bench trial in early 2000, this Court concluded that Andrx's drug did not infringe the '791 patent. In September, 2000, Andrx received tentative approval from the FDA for a generic version of the drug, which Andrx would market under the name Taztia. On February 13, 2001, the United States Court of Appeals for the Federal Circuit upheld this Court's decision that Andrx's generic drug did not infringe the 791 patent. *Biovail Corporation International v. Andrx Pharmaceuticals, Inc.*, 239 F.3d 1297 (Fed.Cir.2001). Thus, the FDA would have approved Andrx's drug on or about February 14, 2001, if not for the actions regarding the '463 patent at issue in this case.

In December 2000, Biovail licensed another patent, the 463 patent, for an extended release formulation of diltiazem, the active drug used in Tiazac. In January,

1. The Court denied Andrx's motion for preliminary injunctive relief seeking this Court to order Biovail Corporation and/or the United States Food and Drug Administration ("FDA") to remove the listing of Biovail's 463 patent from the FDA publication entitled "Approved Drug Products with Therapeutic Equivalence Evaluations" (hereinafter, "the Orange Book").

2001, Biovail made a filing with the FDA that the 463 patent claims Tiazac. Pursuant to the statutory scheme set up by Congress in 21 U.S.C. § 355 ("Hatch–Waxman Amendments"), the FDA listed the patent in the Orange Book and stopped its pending approval of Andrx's drug. Andrx protested the listing to the FDA,[2] which in turn, pursuant to FDA regulations, sought a response from Biovail. Biovail responded, opposing the removal of the listing. Following FDA listing of the 463 patent in the Orange Book, Andrx initiated this lawsuit against Biovail and the FDA. Meanwhile, pursuant to the Hatch–Waxman statutory scheme, to obtain approval for its generic drug, Andrx made its certification to the FDA that its drug does not violate the listed 463 patent. Once Andrx made that certification, Biovail had 45 days in which to decide whether to file a lawsuit alleging patent infringement by Andrx. On April 5, 2001, Biovail filed its patent infringement suit in Case No. 01–6548, which was transferred to the undersigned as a related case to Case No. 01–6194.

On February 9, 2001, Andrx filed a motion for preliminary injunction in Case No. 01–6194 to force the FDA and/or Biovail to remove the listing of the 463 patent as a sham listing in violation of the Hatch–Waxman Amendments' careful balancing of the need to speed approval of cheaper generic drugs for consumers, with patent protections to drug developers to encourage development of pioneer drugs. After briefing of the legal issues and a hearing, this Court denied the motion based not upon the merits of the case but upon the conclusion that the Court lacked subject matter jurisdiction under the FDCA to intervene in the listing process.

Meanwhile, Andrx challenged the FDA to reconsider its listing of the 463 patent, given Biovail's written representation to this Court on February 26, 2001 that Biovail had changed the formulation of Tiazac in order for the 463 patent to claim Tiazac. After meeting with Biovail, the FDA concluded that the reformulation of Tiazac was a major change, and that the reformulated drug was not the approved drug. However, along with warnings about fraudulent filings, the FDA allowed Biovail the opportunity to recertify that the 463 patent indeed claimed the approved drug, which Biovail did on March 26, 2001. The FDA went on to deny Biovail's administrative appeal of the FDA's conclusion that Biovail must formally supplement its NDA for Tiazac due to its reformulation, and concluded in writing to Andrx that its generic drug would be approved, but for the instant infringement suit in this Court (Case No. 01–6548).

Turning back to this litigation, since this Court denied Andrx's motion for preliminary injunction, numerous motions have been filed by the parties in this case. The Court will discuss the substantive motions below, including Andrx's motion for partial summary judgment on the issue of whether the listing of the 463 patent was improper, the Federal Defendants' motions to dismiss the complaint and to dismiss the

---

**2.** The 463 patent itself describes a time-release mechanism for diltiazem by including both a quick-release component and a delayed release component. The quick release component utilizes pure, uncoated diltiazem, while the delayed release component uses coated diltiazem. The 463 patent claims superiority over drugs such as Tiazac, because 463 provides immediate delivery of the drug to the bloodstream to combat morning angina attacks, as well as the delayed release benefits to allow once-a-day intake in the morning. Andrx thus argues that there is no way the 463 could now be used to claim Tiazac since the plain words of the patent itself distinguish drugs like Tiazac as inferior to 463. Moreover, Biovail only obtained license rights under the 463 patent in December 2000 from nonparty DOV Pharmaceutical, Inc.

amended complaint, Biovail's motion to dismiss the amended complaint, Andrx's motion for summary judgment declaring a second 30–month stay inapplicable, Andrx's motion to strike counterclaim,[3] Biovail's motion to consolidate, Andrx's motion to bifurcate and to stay. Andrx's motion for partial summary judgment on grounds of non-infringement filed in Case No. 01–6548, and Biovail's motion to dismiss counterclaim filed in Case No. 01–6548.[4]

## II. DISCUSSION

The Court will first address the Federal Defendants' Motion to Dismiss the Amended Complaint, then resolve the consolidation and bifurcation issues, and then address the motions to dismiss and motions for summary judgment filed by Biovail and Andrx.

### A. Federal Defendants' Motion to Dismiss

■ The Federal Defendants move to dismiss the amended complaint for failure to state a claim for declaratory relief against the FDA, in that the FDA has merely followed the Hatch–Waxman Act and has acted reasonable under the facts of this case. It is long settled that a complaint should not be dismissed unless it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover. *See Linder v. Por-*

*tocarrero,* 963 F.2d 332, 334–336 (11th Cir. 1992) (citing *Robertson v. Johnston,* 376 F.2d 43 (5th Cir.1967)).

Although the Administrative Record subsequently filed by the Federal Defendants [DE 205 and 206] shows that the FDA would approve Andrx's ANDA but for Biovail's recertification on March 26, 2001 that Biovail's reformulated drug is the approved drug that claims the 463 patent, despite FDA's conclusion that the reformulated drug is NOT the approved drug, the Federal Defendants argue that the Amended Complaint does not state a claim against them. The Court must analyze the Complaint and determine whether such a claim has been stated, without reference to the Administrative Record, as that is outside the four corners of the Complaint. The Court notes that the Amended Complaint does not list a specific count alleging any wrongdoing by the Federal Defendants, other than a description of the events that imply an unreasonable action by the FDA. See Amended Complaint, ¶¶ 55–58. The Amended Complaint does include a claim to shorten the aforementioned statutory waiting period under the Hatch–Waxman Act triggered by a patent holder's receipt of notice of non-infringement by a generic competitor, in which Andrx again implies wrongful behavior by the FDA in delaying approval of Andrx's ANDA, but this Count also does not specifically state a legal claim against the FDA. *Id.* at ¶¶ 114–116.

Andrx argues in its opposition to Federal Defendants' motion that the Amended

---

**3.** On April 19, 2001, Biovail filed a counterclaim in Case No. 01–6194 for violations of the federal Lanham Act for false advertising due to Andrx's submission to the Illinois Department of Public Health that its generic drug was equivalent to Biovail's Tiazac drug.

**4.** Andrx filed a counterclaim in Case No. 01–6548 asserting that the 463 patent is invalid,

and incorporated by reference its claims included in its Amended Complaint in Case No. 01–6194 (presumably including the claims under the federal FDCA, the FDUTPA, the Sherman/Clayton Antitrust Act, and Florida common law for tortious interference with business relationships and negligence per se).

Complaint states a claim under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 702–06, (mentioned in ¶ 10 as a jurisdictional basis for this lawsuit) and that under the usual dismissal standard quoted above by the Court, it has stated a claim against the FDA under the APA for the FDA's unreasonable, and arbitrary and capricious, failure to approve Andrx's ANDA under the Hatch–Waxman Act.[5] Andrx argues that accepting its Amended Complaint as true, the FDA has accepted a late listed patent by accepting Biovail's March 26, 2001 certification in violation of the FDA's own regulations, and, the FDA having already concluded that the reformulated drug is not the approved drug, cannot then rely on Biovail's late certification that the patent does claim the approved drug.

In reply, the Federal Defendants argue that Andrx raises these alleged violations of the APA for the first time in its opposi-

tion to the motion to dismiss, but as noted above by this Court, are not specified in the Amended Complaint. The Court agrees with the Federal Defendants. While implying certain procedural facts that may give rise to an APA claim, the Amended Complaint did not put the Federal Defendants on notice of their alleged violations of the APA, even under the liberal notice pleading standard of the Federal Rules of Civil Procedure. Thus, this Court will grant the Federal Defendants' motion to dismiss the Amended Complaint as to the Federal Defendants, without prejudice.[6]

### B. Motion for Consolidation and Motion to Bifurcate and to Stay ·

Biovail has moved to consolidate the two cases listed above in the style of the case. Andrx does not oppose the motion, but seeks to bifurcate the patent and listing issues from the antitrust and Lanham Act

---

**5.** The Court notes that the initial complaint in this case did not make reference to the APA, and whether or not the APA provided a basis for a preliminary injunction against the FDA was not before the Court in written form at that time. Moreover, at oral argument on the motion for preliminary injunction, counsel for Andrx stating in his opening remarks that "[Andrx] sought no relief against the Government on the motion for a preliminary injunction." Transcript of March 1, 2000 hearing, at page 7 [DE 61].

**6.** However, as the Federal Defendants themselves state at page 9, the FDA cannot approve Andrx's ANDA under the Hatch–Waxman Act unless this litigation ends, or "unless the court hearing the infringement action shortens the period due to a party's failure to reasonably cooperate in expediting the action." As discussed below, upon full briefing of the issues surrounding the decision to shorten the waiting period, and in the absence of a genuine dispute about the material issues of fact, this Court is shortening the period, to now end on September 27, 2001. Thus, the Court is removing the statutory basis for the FDA's refusal to approve Andrx's generic product. Despite the misgivings of Andrx, this Court is confident that the FDA, having approved Andrx's drug on safety and efficacy

grounds, and having repeatedly stated that the patent issues are up to this Court, will now do its statutory duty and approve Andrx's generic drug, despite the Court dismissing the Federal Defendants from this case due to Andrx's failure to properly plead an APA claim. In fact, the FDA's own regulations, newly amended as of July 13, 2000, state that approval may be made effective when the Court reduces the 30 month period because of a failure to cooperate in expediting the action. 21 C.F.R. § 314.107. In addition, this Court concludes that any FDA policy of interpreting "court decision" in 21 U.S.C. § 355(j)(5)(B)(iii)(I) concerning the merits of an infringement action to mean the end of the appeal to a United States Circuit Court of Appeals does not apply to a district court decision specifically shortening the 30–month period under § 355(j)(5)(B)(iii). See *Mylan Pharmaceuticals Inc. v. Henney*, 94 F.Supp.2d 36, 52 (D.D.C.2000) ("From the plain, comprehensive and inclusive terms of 21 U.S.C. § 355(j)(5)(B)(iii) and (iv), the court discerns clear congressional intent that the draftsmen intended 'a decision of a court' to mean all court decisions, whether subsequently vacated, settled, appealed or otherwise mooted.")

claims and to stay discovery on the latter. The Federal Defendants oppose consolidation since they are only involved in the patent listing issues and because discovery against them is limited to the administrative record. Since the Federal Defendants are dismissed from the case, as explained above, the Court will grant Biovail's Motion to Consolidate, and enter a separate order to that effect.

As to Andrx's Motion to Bifurcate and to Stay, opposed by Biovail, the Court, in its discretion, will deny this motion. The Court concludes that though Andrx is correct that specific patent issues might be resolved faster, the overall efficiency of handling all claims would be better without a bifurcation and stay of certain issues. Rather, discovery in accordance with the relevancy provisions of the Federal Rules should proceed on all claims at the same time.

### C. Biovail's Motion to Dismiss Amended Complaint

Biovail moves to dismiss all of Andrx's claims for failure to state a claim. As described above, a complaint should not be dismissed unless it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The allegations of the claim must be taken as true and must be read to include any theory on which the plaintiff may recover. *See Linder v. Portocarrero,* 963 F.2d 332, 334–336 (11th Cir.1992) (citing *Robertson v. Johnston,* 376 F.2d 43 (5th Cir.1967)).

#### 1) Delisting Claim

■ With regard to Count I of the Amended Complaint, the Court has previously agreed with Biovail that the Hatch–Waxman Act does not contemplate a pri-

vate right of action apart from the patent infringement lawsuit, now consolidated with this case, in which a party may move to shorten the 30 month stay period (as discussed below). In reviewing Andrx's arguments against dismissal of Count I, the Court concludes that its prior conclusions are still proper, and Count I should be dismissed.[7]

#### 2) State Law Claims

■ Biovail moves to dismiss the state law claims in Counts II, VII and VIII of the Amended Complaint as preempted by the FDCA. Biovail principally relies upon the recent Supreme Court case of *Buckman Company v. Plaintiffs' Legal Committee,* 531 U.S. 341, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001). The Supreme Court held that the "plaintiffs' state law fraud-on-the-FDA claims conflict with, and are therefore impliedly preempted by federal law," 121 S.Ct. at 1017, and that the FDCA is clear "that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance...." 121 S.Ct. at 1018, n. 4. This Court previously relied in part on *Buckman* in its March 6, 2001 Order denying Andrx's motion for preliminary injunction on the grounds of a lack of a private right of action under the FDCA.

Andrx responds to this argument by attempting to distinguish *Buckman* because in this case the FDA admittedly does not have expertise in patent issues, unlike *Buckman,* in which safety issues were the basis of both the state tort claims and the purported fraud upon the FDA. However, though a valid argument, *Buckman* does not appear to make this distinction in its analysis. Rather, the Supreme Court instead made the distinction between state law claims "relying on tradi-

---

7. See also the discussion below in subsection E. regarding Andrx's motion for partial summary judgment as to Count I of the Amended Complaint

tional state tort law which had predated the federal enactments" and state claims where the "existence of these federal enactments is a critical element in [plaintiff's] case." 121 S.Ct. at 1020. Applying this distinction to the Amended Complaint, Andrx's claims for deceptive and unfair practices (Count II), tortious interference with business relationships (Count VII), and negligence per se (Count VIII) all rely on the existence of the patent listing requirements of the Hatch–Waxman Act in the FDCA.[8] Therefore, although an admittedly harsh result given the Court's conclusion that the Hatch–Waxman Act did not create a private right of action, Andrx's state law claims that also rely on the Hatch–Waxman Act are preempted under the reasoning of *Buckman.*

### 3) Antitrust Claims

■ Biovail moves to dismiss Andrx's claims of a conspiracy to restrain trade in the "relevant market for calcium channel blockers" pursuant to Section 1 of the Sherman Act.

Section 1 of the Sherman Act broadly prohibits "[e]very contract, combination ... or conspiracy, in restraint of trade or commerce...." A § 1 conspiracy to restrain trade does not need to allege the specific element of a conspiracy to monopolize, but must allege 1) an agreement to enter a conspiracy, 2) designed to achieve an unlawful objective. It is fundamental that a plaintiff establish an agreement between two or more persons to restrain trade; unilateral conduct is not prohibited by § 1.

*Aquatherm Industries, Inc. v. Florida Power & Light Co.,* 145 F.3d 1258, 1262 (11th Cir.1998), *cert. denied,* 526 U.S. 1050,

119 S.Ct. 1356, 143 L.Ed.2d 517 (1999) (internal citations omitted). In this case, Andrx alleges that Biovail's license agreement with DOV Pharmaceuticals is an agreement allowing Biovail to unlawfully restrain Andrx's entry into the calcium channel blocker market. Biovail argues that it is legally incapable of conspiring with the entity that licensed its patent to Biovail, due to their unity of interest in the agreement. However, Andrx argues that it is the agreement itself that forms the conspiracy, not behavior after execution of the agreement. The Federal Circuit has stated that "[I]ntellectual property rights do not confer a privilege to violate the antitrust laws." *In re Independent Service Organizations Antitrust Litigation,* 203 F.3d 1322, 1325 (Fed.Cir.2000). In addition, Andrx has alleged harm to consumers in terms of higher prices, and to competition, by the prevention of Andrx's entry into the market through Biovail's patent (via the license) listing. Since neither side cites to a case directly on point, at this motion to dismiss stage, the Court concludes that Andrx has stated a claim for unlawful restraint of trade.[9]

Biovail also moves to dismiss Andrx's claim of a conspiracy to monopolize under Section 2 of the Sherman Act. The standard for a claim under Section 2 is similar, but has additional elements than a Section 1 claim.

The elements of a conspiracy to monopolize under Section 2 are (1) an agreement to restrain trade, (2) deliberately entered into with the specific intent of achieving a monopoly rather than a legitimate business purpose, (3) which could have had an anticompetitive effect,

---

**8.** See e.g. ¶¶ 78, 80, 81, 120, 122, 124, and 125 of the Amended Complaint.

**9.** Biovail's reliance on *Dunnivant v. Bi–State Auto Parts,* 851 F.2d 1575, 1579 (11th Cir. 1988) is misplaced, as that case was at the summary judgment stage. The "sparse" pleadings by Andrx in this case are sufficient to withstand a motion to dismiss. Whether they can withstand a motion for summary judgment is a matter for a later date.

and (4) the commission of at least one overt act in furtherance of the conspiracy.

*U.S. Anchor Mfg., Inc. v. Rule Industries, Inc.,* 7 F.3d 986, 1001 (11th Cir.1993) (internal citations omitted).

Biovail makes similar arguments for dismissal as with the Section 1 claim, but adds that Andrx here has not alleged how DOV Pharmaceuticals had any specific intent of achieving a monopoly since it did not participate in the calcium channel blocker market. However, the case relied upon by Biovail on this last point, *Aquatherm,* involved claims against the party, FPL, that was not involved in the market. Here, Andrx does not bring claims against DOV, and it is not clear that such allegations must be brought against a non-party member of the alleged conspiracy. Rather, Andrx has alleged that there was an agreement between Biovail and DOV to license a patent that allowed Biovail to take an overt act and list a patent with the FDA with the specific intent of at least Biovail to keep Andrx out of the calcium channel blocker market. At the motion to dismiss stage, Andrx has stated a claim for conspiracy to monopolize.

■ Turning next to the claim of attempted monopolization, Biovail argues that it has patent immunity to this antitrust claim and Andrx has failed to define the proper market.

There are three essential elements of a claim alleging attempted monopolization under section 2 of the Sherman Act. First, the plaintiff must show that the defendant possessed the specific intent to achieve monopoly power by predatory or exclusionary conduct. Second, the defendant must in fact commit such anticompetitive conduct. Third, there must have existed a dangerous probability

that the defendant might have succeeded in its attempt to achieve monopoly power.

*U.S. Anchor Mfg., Inc.,* 7 F.3d at 993.

As discussed above, the Federal Circuit has not completely eliminated antitrust claims in the patent context. *In re Independent Service Organizations Antitrust Litigation, supra,* 203 F.3d 1322, 1325 (Fed.Cir.2000). At this motion to dismiss stage, the Court is not convinced that the Federal Circuit would dismiss the Amended Complaint in this case. As to definition of the market, again, Andrx has stated a valid market in which Biovail purportedly has a dangerous probability of succeeding in obtaining monopoly power, at least in the diltiazem portion of the market. Refinement of the relevant market can await further discovery.[10]

Finally, Andrx argues that is has also stated a claim for monopolization under Section 2, in addition to its claims for conspiracy to monopolize and attempted monopolization. Biovail does not appear to directly respond to this part of the claim, and it is unclear that any different arguments other than those already made by the parties on the other two claims are present here. Thus, the Court concludes that as a whole, Biovail's motion to dismiss Count III is denied.

*4) Infringement/Invalidity Claims*

■ Biovail moves to dismiss these claims as premature when filed and therefore barred by the Hatch–Waxman Act. See 21 U.S.C. § 355(j)(5)(B)(iii). The Act states that during the 45–day period in which the patent holder decides whether to sue the generic applicant for patent infringement, the generic drug applicant cannot bring an action pursuant to the Declaratory Judgment Act with respect to

---

**10.** The Court rejects Andrx's request to further amend its complaint by the "Supplemental Complaint" or anything other than a properly filed motion to amend.

the patent. Despite Andrx's arguments, these two counts are related to the patent. Moreover, the Court notes that these claims for a declaratory judgment of non-infringement and invalidity of the '463 patent were filed as counterclaims in the Second Counterclaim in Case No. 01–6548, the Biovail infringement action.[11] Thus, these claims are properly filed as counterclaims in the latter case, but are barred in this case. The Court will thus dismiss Counts IV and V, without prejudice, from Case No. 01–6194, but as stated below, allow them in Case No. 01–6548.

### D. Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and any doubts in this regard should be resolved against the moving party, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. To discharge

this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). According to the plain language of Fed. R.Civ.P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202.

### E. Partial Summary Judgment on Count I—Hatch–Waxman Act Delisting Remedy

Andrx moved for partial summary judgment on Count I of its complaint on the same legal grounds as in its motion for

---

**11.** In that case, Biovail moves to dismiss those counterclaims as duplicative of the

claims in Andrx's Amended Complaint.

preliminary injunction, seeking a declaration that "Biovail's listing of the '463 patent in the Orange Book for Tiazac is in violation of the Hatch–Waxman Act." Andrx argues that the findings of this Court in the preliminary injunction context are not binding on a resolution of the merits at trial or on summary judgment. In opposition to the motion, Biovail argues that Andrx is once again attempting to imply a private right of action where none exists, and that Andrx's filing of an amended complaint moots the relief requested in the instant motion. Since Count I of the Amended Complaint is substantially the same as Count I of the initial complaint, the Court will proceed to address the arguments in the motion. While the Court agrees with Andrx that its ruling at the preliminary injunction stage does not forestall Andrx seeking similar relief in a motion for summary judgment, in this case, the simultaneous filing of the two motions leads this Court to the same conclusion on the instant motion as on the previous motion for preliminary injunction. Andrx does cite to a recent District of Columbia District decision decided shortly after this Court's Order denying Andrx's motion for preliminary injunction, that did find a private right of action for a similar delisting claim as brought by Andrx. See *Mylan Pharmaceuticals, Inc. v. Thompson*, 139 F.Supp.2d 1 (D.D.C.2001). Otherwise, Andrx presents nothing new that would cause this Court to change its own conclusions that the plain language of the FDCA does not grant Andrx to enforce or restrain violations of the FDCA. Thus, this Court respectfully disagrees with the conclusions in *Mylan Pharmaceuticals*.[12] As the Court stated in its March 6, 2001 Order, if the:

> decision to delist in a particular case is outside the FDA's expertise or the FDA

is unwilling to act, and therefore must be decided between private litigants in the federal courts, then such dispute must follow the procedures of the 45 day waiting period following the generic drug maker's certification under 21 U.S.C. Section 355(j)(2)(A)(vii)(IV) that its product does not infringe the listed patent for a specified reason. See 21 U.S.C. Section 355(j)(5)(B)(iii). The authority of a district court to police any alleged abuses of the Hatch–Waxman Amendments waiting period for approval would arise when the patent holder initiated suit against the generic maker under Section 355(j)(5)(B)(iii). At that point, the generic maker could make application to the Court that the 30 month statutory stay should be made shorter or longer in a particular case "because either party to the action failed to reasonably cooperate in expediting the action," *id.*

See page 9–10 of this Court's March 6, 2001 Order [DE 52]. Thus, the Court denies Plaintiff's Motion for Summary Judgment as to Count I, and, as described above, dismisses Count I of the Amended Complaint.

### F. Partial Summary Judgment on 30 Month Stay Issue

■ Andrx moves for partial summary judgment on Count VI of its Amended Complaint, wherein it seeks an elimination or reduction of the 30 month statutory stay. This provision of the Hatch–Waxman Act states that the FDA's approval of the generic drug application "shall be made effective upon the expiration of the thirty-month period beginning on the date of the receipt of the notice provided under paragraph (2)(B)(i) or such shorter or longer period as the court may order be-

---

12. The Court takes notice of Plaintiff's Notice of Supplemental Authority that the Federal Circuit has denied a stay pending appeal of the district court's order compelling delisting.

cause either party to the action failed to reasonably cooperate in expediting the action...." 21 U.S.C. Section 355(j)(5)(B)(iii). Andrx makes several statutory interpretation and/or legal arguments that this section does not apply to this case: first, that a recertification of a generic drug to a second listing of a patent for an approved drug having already received a 30 month stay is not subject to a second 30 month stay; second, that an ANDA does not need to certify to a patent listed after FDA tentative approval of the ANDA, as in this case; third, that the listing in this case was not timely since Biovail's January listing to the FDA was deemed inadequate by the FDA; and, fourth, that Biovail's admission that it changed the formulation of the approved drug, Tiazac, means that Biovail improperly listed the '463 patent and therefore cannot qualify for a 30 month stay. In addition, Andrx argues that under the facts of this case, Biovail has failed to expedite resolution of this case.

The FDA opposes the four statutory or legal arguments described above, but takes no position on the Court's authority to shorten the 30 month period for failure to expedite, though the FDA notes that such motion should have been filed in Case No. 01–6548. Biovail opposes the motion to shorten the period as to all grounds, arguing against the failure to expedite argument by showing it has filed many motions or responses within the required time periods.

The Court notes at the outset that this motion should have been filed in Case No. 01–6548, however, now that the cases are consolidated on motion of Biovail, the Court will exercise its discretion and address the merits of this fully briefed motion. The relevant portion of Section 355(j)(5)(B)(iii) refers to expediting "the action," which presumably refers to the infringement action, however, given the

consolidation of the infringement action with Andrx's original action, the Court concludes that there is no legal significance to requiring Andrx to merely change the case number on its motion prior to it being heard.

Having reviewed the merits of the action, the Court declines to base its decision on the four statutory or legal arguments put forth by Andrx. Although Andrx's argument with respect to the fact that Section 355(j)(5)(B)(iii) only refers to notice provided under subparagraph (2)(B)(i) and not amended certifications under subparagraph 2(B)(iii), and therefore the plain language evidences Congress' intent not to have the 30 month stay apply to patents listed after a generic drug application has already certified to patents in existence at the time of the initial application, has some merit, the Court will defer on this issue of first impression to the position of the FDA, and without rejecting Andrx's argument, will not base its decision upon that argument. Similarly, the Court concludes that it need not rely on Andrx's arguments that a patent listed after "tentative approval" by the FDA need not be certified to, since the FDA is in the best position to determine what the agency created term of "tentative approval" actually means. Finally, relying on its earlier conclusion that the Hatch–Waxman Act does not create a private right of action against the FDA, Andrx's arguments regarding late listing of the '463 patent and improper listing essentially attack the administrative decisions of the FDA, and will not be further addressed here.

However, some of the arguments Andrx puts forth in explaining why Biovail's listing of the '463 patent through its March 26, 2001 declaration to the FDA was improper, are relevant to the Court's analysis of whether Biovail has filed to expedite this action. The only published District

Court decision interpreting the meaning of "reasonably cooperate in expediting the action" implied that a party could violate its duty to so cooperate even by filing non-frivolous motions. *See Zeneca Ltd. v. Pharmachemie B.V.,* 16 F.Supp.2d 112, 113 (D.Mass.1998) (in affirming a report from a magistrate judge recommending denial of a motion to extend the 30 month period, the District Court stated: "The Court does not intend to suggest, however, that a party may not violate its affirmative duty to 'reasonably cooperate in expediting the action,' under 21 U.S.C. § 355(j)(5)(B)(iii), even when it pursues a non-frivolous assertion of its rights."). This Court agrees. Even if all of Biovail's filings in these two cases are not frivolous, its overall conduct in listing the '463 patent based upon a manufacturing change that the FDA has concluded is a "major" change requiring a supplement to Biovail's New Drug Application, and that with this change, Biovail's Tiazac drug is *not* an approved drug, was not done to reasonably cooperate in expediting the action. Whether or not the listing of the '463 patent is a "sham listing" as Andrx urges this Court to conclude, it is clear that Biovail's actions with regard to obtaining the '463 patent after tentative approval of Andrx's generic drug and changing the formulation of its own approved drug, Tiazac, to come within the newly obtained patent were done to impede or delay the expeditious resolution of the patent actions between Biovail and Andrx over approval of Andrx's generic equivalent to Tiazac.

Though the FDA should have (and may have) the authority to delist patents that it otherwise concludes do not claim the approved drug, it is clear that this Court was given the express authority in the Hatch–Waxman Act to police the Congressional compromise between patent protections for the pioneer drug maker and the public's need for speedy approval of safe lower-cost generic equivalents to those drugs.

This Court, having conducted the trial in the earlier patent infringement action brought by Biovail over the same Andrx generic drug, concludes that Biovail has already had a stay of approval of Andrx's drug since August 25, 1998, a period of over 36 months since Biovail's receipt of Andrx's certification. See Complaint, ¶ 9, DE 1 in Case No. 98–7096–CIV–DIMI-TROULEAS. Putting aside Andrx's legal argument that a pioneer drug maker cannot as a matter of law obtain a second 30 month stay of the same generic drug approval, Biovail has not put forth any reported decision allowing a second 30 month stay under any set of facts. Moreover, the Court rejects Biovail's argument that it limit its analysis to only the specific filings in Case No. 01–6548, the actual infringement action. Such a myopic approach to each listed patent would lead to a potentially endless listing of patents to prolong FDA approval of a generic competitor.

On the facts of this case, as explained above, Biovail's actions in listing the '463 patent without disclosing its unilateral manufacturing change to its own approved pioneer drug, done for the purpose of coming under the '463 patent at the expense of jeopardizing FDA approval of Tiazac in its new form, conclusively shows a failure to reasonably cooperate in expediting the action to resolve the patent issues prior to FDA approval of Andrx's generic drug. Therefore, the Court concludes that the remedy of ending the statutory stay is appropriate in this case at this time. The Court thus grants partial summary judgment in favor of Andrx and against Biovail, and decides that under 21 U.S.C. Section 355(j)(5)(B)(iii) the statutory stay should end on September 27, 2001, and the FDA, having already concluded that Andrx's Taztia drug is safe and effective, should approve Andrx's ANDA.

### G. Andrx's Motion to Dismiss Biovail's Counterclaims in Case No. 01-6194

█ Biovail has filed a counterclaim alleging violation of the federal Lanham Act for Andrx's submission to the State of Illinois Formulary which sought to add Andrx's generic drug, Taztia, to the approved list of drugs in Illinois, once it obtained FDA approval. Biovail alleges that Andrx misrepresented to the Illinois Department of Public Health that Taztia is bioequivalent to Biovail's Tiazac, referring to purported differences in peak plasma concentrations. Counterclaim, DE 119, ¶ 15–21. Andrx moves to strike the counterclaim as an improper pleading, and to dismiss the counterclaim for failure to state a claim under the Lanham Act.

Andrx's first argument is that under Rule 7 of the Federal Rules of Civil Procedure, Biovail cannot file a counterclaim independent of an answer (or partial answer). That is, since Biovail moved to dismiss all claims, any counterclaim must wait and attach to an answer that is filed if the motion to dismiss is not granted. Biovail does not directly respond to this argument, instead arguing that it could have filed an answer, counterclaim, and motion for judgment on the pleadings, leading to the same situation as a motion to dismiss and a counterclaim; and, that motions to strike are not favored. This issue presents an interesting issue of civil procedure that is not readily answerable,[13] and need not be answered herein, as the Court concludes that the counterclaim does not state a claim under the Lanham Act.

To prevail on a false advertising claim, Biovail must prove:

(1) that the defendant made a false representation of fact about its own or another's product or services in commercial advertising or promotion;

(2) that the statement actually deceived or has the tendency to deceive a substantial segment of its audience;

(3) that the deception is material, in that it is likely to influence the purchasing decision;

(4) that the defendant caused its false statement to enter interstate commerce; and,

(5) that the plaintiff has been or is likely to be injured as a result of the false statement be a casually related diversion of sales or by a lessening of the goodwill associated with its products.

*BellSouth Advertising & Pub. Corp. v. Lambert Pub.*, 45 F.Supp.2d 1316, 1320 (S.D.Ala.1999), *aff'd*, 207 F.3d 663 (11th Cir.2000). Andrx argues, among other things, that Biovail has not alleged that Andrx made a false statement. While it is true that Biovail carefully avoids stating that "Andrx made a misrepresentation to the State of Illinois," it is clear from reading the Counterclaim that Biovail alleges that Andrx told Illinois that Taztia is bioequivalent to Tiazac, but according to Biovail, this statement is not true. For purposes of this motion to dismiss, that is

---

**13.** Though Rule 7 appears not to contemplate counterclaims not attached to an answer, Rule 13(b) regarding permissive counterclaims implies that counterclaims must be a part of a "pleading," but contains no temporal limitation. The Eleventh Circuit, in interpreting Rule 38 regarding the definition of "pleading" in the Federal Rules, looked to Rule 7 and stated that "Rule 7 clearly states that a pleading is (1) a complaint, (2) an answer, (3) a reply to a counterclaim, (4) an answer to a cross-claim, (5) a third-party complaint, or (6) a third-party answer. Under the well-settled doctrine of *inclusio unius, exclusio alterius*, the listing of some things implies that all things not included in the list were purposefully excluded." *Burns v. Lawther*, 53 F.3d 1237, 1241 (11th Cir.1995). However, this decision did not involve the instant situation of a counterclaim unattached to an answer.

sufficient. However, it is also clear that Biovail cannot show that this "statement" would actually deceive the state of Illinois or any other state, since it is the FDA that makes the bioequivalence determination. More importantly, the Illinois Formulary Submissions that are publicly available clearly note that Andrx's drug is not yet approved by the FDA.[14] Thus, even if Andrx misrepresented bioequivalence to the State of Illinois (a factual matter in dispute), no one could be deceived by that statement since everyone would know that the FDA would make that determination, and Andrx's drug would not in fact be available until that FDA decision is made. Rather, Biovail's Lanham claim is somewhat analogous to the "fraud-on-the-FDA" claim that Biovail has convinced this Court Andrx cannot maintain, in that whether Andrx's statement to Illinois is a misrepresentation or not hinges on the decision of the FDA, in its statutory duty, to determine whether Andrx's generic drug is bioequivalent to Biovail's drug. Therefore, for these reasons, the Court concludes that Biovail has not stated a claim under the Lanham Act, and its Counterclaim should be dismissed.

### H. Biovail's Motion to Andrx's Counterclaims in Case No. 01–6548

In Biovail's patent infringement case, Andrx has filed an answer including a "First Counterclaim" and "Additional Counterclaims." Biovail moves to dismiss these counterclaims as vague and conclusory and not stating any valid claims. The First Counterclaim is vague in that it while it lists many basis for jurisdiction, it seems to merely assert that Biovail's '463 patent is invalid, unenforceable, and would not be infringed by Andrx's generic product. In the "Additional Counterclaims" Andrx seeks to incorporate by reference its eight (8) claims asserted in Case No. 01–6548. As these cases are now consolidated, the rulings above dismissing some of those claims applies to this case as well. Along the same lines, those claims not dismissed, such as the anti-trust claim, would be duplicative if asserted as a counterclaim in this action. Finally, with regard to the declaratory judgment claims for invalidity and non-infringement, those claims are properly brought as counterclaims to this infringement action, and are also the only claims spelled out with sufficient notice in the labeled Counterclaims.

Therefore, this Court concludes that the only properly pled counterclaims for Andrx against Biovail are the counterclaims for a declaratory judgment that the '463 patent is invalid, unenforceable and that Andrx's product does not infringe this patent. See Answer and Counterclaims, DE 12 in Case No. 01–6548, ¶¶ 24, 25, 26, 27, 28 and 30.B, C and D. Any reference to the antitrust statutes or claims for damages are hereby stricken from the Counterclaim section of this pleading.

### III. CONCLUSION

The end result of the above decisions on the various motions by the parties leaves the following claims to be litigated: Andrx's claim in Count III of its Amended Complaint for anti-trust violations, Biovail's infringement action (Case No. 01–6548), and Andrx's counterclaim for inval-

---

14. Biovail itself seeks this Court to take judicial notice of the publicly available Illinois Formulary information attached as Exhibit A to its opposition to Andrx's motion to strike or dismiss. See DE 165 and 166. That public document is clear that the FDA has not approved Andrx's generic drug. The Court may consider the public document for purposes of a motion to dismiss. See *Brooks v. Blue Cross & Blue Shield of Fla.*, 116 F.3d 1364, 1369 (11th Cir.1997); *Bryant v. Avado Brands, Inc.* 187 F.3d 1271, 1278 (11th Cir.1999).

idity and non-infringement. The remaining claims are dismissed, or in the sole case of Count VI of Andrx's Amended Complaint, summary judgment is granted to Andrx on the 30 month stay issue. The Court will separately enter a scheduling order to apply to these remaining claims.

Accordingly, for the reasons detailed above, it is **ORDERED AND ADJUDGED** as follows:

1. Biovail's Motions to Admit Attorney Nancy Kilson Pro Hac Vice [DE 6 and 60 in Case No. 01–6548] are hereby **GRANTED;**

2. Andrx's Motion to Transfer Case [DE 4–1] and to Expedite [DE 4–2] are hereby **DENIED as moot;**

3. The various motions or requests for oral argument, expedited treatment, or for status conference [DE 79, 89–2, 98–2, 102, and 135 in Case No. 01–6194 and DE 16 in Case No. 01–6548] are hereby **DENIED;**

4. The various motions to exceed page limitations [DE 82, 96, 105, 124, 136, 146 and DE 53 in Case No. 01–6548] are hereby **GRANTED;**

5. All motions to seal [DE 48 and 50 in Case No. 01–6548], and all filings requiring an Order Re Sealed Filing are hereby **GRANTED,** and all filings filed under seal shall remain under seal until further Order of the Court, pursuant to the previously entered protective orders for these two cases;

6. Biovail's Motion for Enlargement of Time [DE 24] to Respond to Motion for Summary Judgment is hereby **GRANTED;**

7. The Federal Defendants' Motion to Dismiss Complaint [DE 30] is hereby **DENIED as moot,** given the filing of an Amended Complaint and a motion to dismiss the Amended Complaint;

8. The Federal Defendants' Motion to Dismiss Amended Complaint [DE 86] is hereby **GRANTED** without prejudice, for failure of Andrx to state a claim;

9. Biovail's Motion to Consolidate [DE 207] is hereby **GRANTED,** and separate consolidation and scheduling orders shall be entered;

10. Andrx's Motion to Bifurcate and to Stay [DE 208] is hereby **DENIED;**

11. Biovail's Motion to Dismiss the Amended Complaint [DE 88] is hereby **GRANTED in** part as to Count I, II, IV, V, VII, and VIII and **DENIED** as to the other claims, as discussed above;

12. Andrx's Motion for Leave to file Sur–Reply [DE 148] is hereby **DENIED,** as the Court has not relied on any of the "new" cases cited by Biovail in its Reply Memorandum in support of its motion to dismiss;

13. Plaintiff's Motion for Partial Summary Judgment [DE 7] is hereby **DENIED;**

14. Andrx's Motion for Summary Judgment Declaring 30–month Stay Inapplicable [DE 98] is hereby **GRANTED,** and the statutory stay under 21 U.S.C. § 355(j)(5)(B)(iii) shall end on September 27, 2001;

15. Andrx's Motion to Strike Counterclaim [under seal at DE 151–153] is hereby **DENIED,** while Andrx's Motion to Dismiss Counterclaim is hereby **GRANTED;**

16. Biovail's Motion to Dismiss Counterclaim [DE 27 in Case No. 01–6548] is **GRANTED in part** as to First Counterclaim, and Denied as to Second Counterclaim for a de-

claratory judgment of invalidity and non-infringement.