ZENECA LIMITED, Plaintiff,

v.

PHARMACHEMIE B.V., Defendant.

Civil Action No. 96–12413–RCL.

United States District Court,
D. Massachusetts.

Aug. 10, 1998.

Paul B. Galvani, Ropes & Gray, Boston, MA, Joel M. Cohen, Davis Polk & Wardwell, New York , NY, James E. Gray, Goodell, DeVries, Leech & Gray, Baltimore, MD,

---

John Lowe, Herbert H. Mintz, Robert D. Litowitz, Barbara R. Rudolph, John C. Lowe, Finnegan, Henderson, Farabow, Garett & Dunner, LLP, Washington, DC, for Zeneca Limited, Plaintiff.

Francis C. Lynch, Laurie S. Gill, Anne Robbins, Palmer & Dodge, Boston, MA, for Pharmachemie BV, Defendant.

Gary C. Crossen, Gregory T. Moffatt, Foley, Hoag & Eliot, Boston, MA, for Barr Laboratories, Inc., Interested Party.

## ORDER ON REPORT AND RECOMMENDATION ON ZENECA'S MOTION TO EXTEND THE 30–MONTH STATUTORY BAR

LINDSAY, District Judge.

Upon consideration of the Report and Recommendation of Magistrate Judge Collings in this action, and the submissions of the parties in response, the Court determines as follows. The Court accepts the Report and Recommendation. The Court does not intend to suggest, however, that a party may not violate its affirmative duty to "reasonably cooperate in expediting the action," under 21 U.S.C. § 355(j)(5)(B)(iii), even when it pursues a non-frivolous assertion of its rights. In this case, however, the record shows that the defendant has cooperated reasonably in expediting this action including giving its consent to a prompt trial of the case before Magistrate Judge Collings.

SO ORDERED.

## REPORT AND RECOMMENDATION ON ZENECA'S MOTION TO EXTEND THE 30–MONTH STATUTORY BAR (# 66)

COLLINGS, United States Magistrate Judge.

### I. Introduction

The plaintiff Zeneca Limited (hereinafter "Zeneca") has filed a motion seeking to extend the 30–month statutory bar provided under Title 21 U.S.C. § 355(j)(5)(B)(iii) which at present forestalls any action by the Food and Drug Administration to grant final approval to an Abbreviated New Drug Application filed by the defendant Pharmachemie B.V. (hereinafter "Pharmachemie"). Such final approval would allow the defendant to manufacture and market a generic version of tamoxifen, a drug used in treating breast cancer for which Zeneca holds the patent. Absent an extension, the statutory bar will expire in mid-August, 1998, prior to October 19, 1998, the date on which the patent infringement trial in this case is scheduled to begin before the District Judge to whom this case is assigned. Pharmachemie opposes the plaintiff's motion.

### II. The Facts

An abbreviated review of the historical facts will serve to place this controversy in context. In and of themselves, the facts are basically not disputed.[1] Zeneca is the owner of U.S. Patent 4,536,516 ("the '516 patent") directed to the cancer drug tamoxifen which the plaintiff markets in the United States under the trademark NOLVADEX. Pharmachemie, a generic drug manufacturer, wants to sell a generic version of NOLVADEX in this country during the life of the '516 patent, i.e., before August, 2002. To that end, Pharmachemie has submitted an Abbreviated New Drug Application ("ANDA") for tamoxifen to the Food and Drug Administration ("FDA") for approval. Additionally, in accordance with the applicable statutory scheme set forth in the Hatch–Waxman Act,[2] the defendant filed a so-called "Paragraph IV" certification contending that the '516 patent is invalid and/or unenforceable. See 21 U.S.C. § 355(j)(2)(A)(vii)(IV). The act of submitting the ANDA and the Paragraph IV certification to the FDA in order to obtain approval to make and sell a generic drug constitutes an act of patent infringement under 35 U.S.C. § 271(e)(2)(A).[3]

---

1. The parties do trade accusations regarding each other's motives and intentions in taking different actions.

2. The official name of the legislation is The Drug Price Competition and Patent Term Restoration Act of 1984, Pub.L. No. 98–417, 98 Stat. 1585 (1984)(codified in relevant part at 21 U.S.C. § 355 and 35 U.S.C. § 271).

3. This provision reads: "It shall be an act of infringement to submit an application under section 505(j) of the Federal Food, Drug, and Cosmetic Act or described in section 505(b)(2) of

Pharmachemie duly complied with another statutory mandate: the defendant notified Zeneca that the Paragraph IV certification had been submitted and provided its factual and legal basis for alleging that the '516 patent is not valid. *See* 21 U.S.C. § 355(j)(2)(B)(ii). On or about March 22, 1996, in response to the notification, Zeneca filed a patent infringement suit against Pharmachemie in the United States District Court for the District of Maryland within the forty-five day period provided by statute thereby automatically invoking the 30–month stay against action by the FDA with respect to Pharmachemie's ANDA. *See* 21 U.S.C. § 355(j)(5)(B)(iii). To be more precise, the statute provides that

> (B) The approval of an application submitted under paragraph (2) shall be made effective on the last applicable date determined under the following:

> \*  \*  \*  \*  \*  \*

> (iii) If the applicant made a certification described in subclause (IV) of paragraph (2)(A)(vii), the approval shall be made effective immediately unless an action is brought for infringement of a patent which is the subject of the certification before the expiration of forty-five days from the date the notice provided under paragraph (2)(B)(i) is received. If such an action is brought before the expiration of such days, the approval shall be made effective upon the termination of the thirty-month period beginning on the date of the receipt of the notice provided under (2)(B)(i) *or such shorter or longer period as the court may order because either party to the action failed to reasonably cooperate in expediting the action . . .*

Title 21 U.S.C. § 355(j)(5)(B)(iii) (emphasis added).

It is pursuant to this provision that Zeneca is moving for an extension of the 30–month bar on the grounds that Pharmachemie has "failed to reasonably cooperate in expediting the action."

At the time that Zeneca commenced suit against Pharmachemie, it was already engaged in comparable [4] ongoing litigation with another generic drug company, Novopharm Limited, in the federal court in Maryland. Indeed, approximately one month after the *Pharmachemie* case was filed, the *Novopharm Limited* case was decided. Following a non-jury trial, not having been persuaded by the mouse data defense or any other defense presented, the district judge determined that the '516 patent was valid and had been infringed.[5] Consequently, Novopharm Limited was enjoined from pursuing approval of its ANDA or from distributing tamoxifen until the '516 patent expired.

In May of 1996 when the time came for Pharmachemie to answer or otherwise response to Zeneca's complaint, Pharmachemie moved to dismiss for lack of personal jurisdiction or, in the alternative, to transfer. On June 17, 1996, the district judge concluded that the government contacts rule foreclosed predicating personal jurisdiction over Pharmachemie upon the filing of the ANDA and Paragraph IV certification in Maryland. Zeneca was, however, granted a sixty-day period during which to undertake discovery to probe other possible bases for jurisdiction. Two days later on June 19th the district judge consolidated the *Pharmachemie* case with two other pending actions involving the '516 patent, *Zeneca Limited v. Mylan Pharmaceuticals, Inc.* and *Zeneca Limited v. Lemmon Company,* and stayed any further proceedings except for the jurisdictional discovery pending a ruling on Pharmachemie's dispositive motion.

---

such Act for a drug claimed in a patent or the use of which is claimed in a patent." *See generally Eli Lilly and Company v. Medtronic, Inc.,* 496 U.S. 661, 678, 110 S.Ct. 2683, 110 L.Ed.2d 605 (1990).

**4.** In their respective notification letters to Zeneca, both Novapharm Limited and Pharmachemie asserted that Zeneca's predecessor, Imperial Chemical Industries, engaged in inequitable conduct when it failed to disclose certain mice test

results to the U.S. Patent Office during the prosecution of the '516 patent that conflicted with the results of rat tests that were submitted. (Memorandum In Support, # 67, Exh. A and B)

**5.** Zeneca notes that the judge's decision was affirmed by the Federal Circuit in a unpublished opinion. *See Zeneca Ltd. v. Novopharm Ltd.,* 111 F.3d 144 (Fed.Cir., 1997).

When the two month period had passed, Pharmachemie renewed its motion to dismiss. Initially the motion was denied, but after Pharmachemie moved for reconsideration, on November 22, 1996, the district judge reversed his earlier decision, unconsolidated the cases [6] and transferred the *Pharmachemie* action to Massachusetts. In mid-December, 1996, Pharmachemie filed its answer to Zeneca's complaint.

With the jury trial in the instant case scheduled to commence on October 19, 1998, but the automatic bar due to expire in August of this year, Zeneca has filed the motion to extend the stay. The motion was filed on May 18, 1998.[7] The motion was referred to the undersigned on June 16th; a hearing was held on June 26th. Since the motion seeks relief in the nature of injunctive relief, I am not able to decide the motion but must proceed to write a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B).

### III. Discussion

The Federal Circuit has had occasion to write that:

> the Hatch–Waxman Act strikes a balance between the interests of a party seeking approval of an ANDA and the owner of a drug patent. On the one hand, the manufacture, use, or sale of a patented drug is not an act of infringement, to the extent it is necessary for the preparation and submission of an ANDA. On the other hand, once it is clear that a party seeking approval of an ANDA wants to market a patented drug prior to the expiration of the patent, the patent owner can seek to prevent approval of the ANDA by bringing a patent infringement suit. While it is pending, such a suit can have the effect of barring ANDA approval for two and a half years.

*Bristol–Myers Squibb Company v. Royce Laboratories, Inc.,* 69 F.3d 1130, 1132 (Fed. Cir., 1995).

That this legislation was a compromise measure is reflected in its history. For example, with respect to the 30–month stay provision, at least one proposed amendment (an amendment proposed by Rep. Sawyer) which "would have required that either the patent expire before [FDA] approval [of a generic substitute for marketing], or that there be a final decision by a Federal District Court that the patent in question was not valid" was rejected. H.R.Rep. No. 98–857, Part. II at 9 (1984), *reprinted in* 1984 U.S.C.C.A.N. 2647, 2693. Rather, it was noted by the House Committee that the provision that the FDA could not approve marketing authority after litigation had commenced until an 18–month stay [8] had passed, or the validity of the patent had been determined, "was added . . . to accommodate the competing concerns of the PMA [Pharmaceutical Manufacturing Association] and the generic manufacturers." *Id.* It was concluded that

> the net effect of the Sawyer amendment would have been to substantially delay generics from getting onto the market when they seek to challenge the validity of a patent. According to statistics of the Judicial Conference of the United States, the median time between filing and disposition of a patent suit is 36 months. Over ten percent of these cases take more than 77 months. Thus, a requirement that FDA defer generic approval until after a court decision of patent invalidity would substantially delay FDA approvals. Of course, in the event that the FDA approves a generic because of the expiration of 18 months without a court decision, and it is later

---

**6.** The *Lemmon Company* litigation was terminated in August, 1996. The *Mylan* action was later transferred to the Western District of Pennsylvania, but the court there ruled that the transfer from Maryland was improper and that personal jurisdiction could be founded upon Mylan's ANDA filing in Maryland. That jurisdictional ruling was appealed and the case argued before the Federal Circuit in January of this year. *Zeneca Ltd. v. Mylan Pharmaceuticals, Inc.,* Appeal No. 97–1477 (Fed.Cir.). No decision has been rendered to date.

**7.** Although it makes no difference in the outcome, the Court cannot help but note that it is curious that Zeneca waited until May 18, 1998 to file its motion when the District Judge to whom this case is assigned set the October 19, 1998 trial date at a conference on November 13, 1997, a full seven months before the motion to extend the 30–month statutory bar was filed.

**8.** This was later amended to a 30–month stay apparently as a further compromise.

determined that the patent is valid, the patent owner may still recover damages from the generic. Therefore, in most cases the bill affords greater protection for patent holders than current law.

H.R.Rep. No. 98–857, Part II at 9 (1984), *reprinted at* 1984 U.S.C.C.A.N. 2647, 2694 (citation and footnote omitted).

Plainly legislators were aware of the potential length of time it takes to resolve patent litigation, yet a stay intended to coincide precisely with that period was rejected. In light of this legislative history so, too, must Zeneca's argument that the 30–month statutory bar was "intended to preserve the status quo during the course of the *entire* patent infringement litigation" be rejected. (Zeneca's Reply # at 1)(emphasis added). That the statutory bar might expire prior to a ruling on the validity of the patent was anticipated and accepted by legislators as part of the compromise measure.

The plaintiff's primary contention is that by contesting personal jurisdiction in the court in Maryland, Pharmachemie "failed to reasonably cooperate in expediting the action" such that Zeneca should be entitled to an extension of the 30–month bar under 21 U.S.C. § 355(j)(5)(B)(iii). That argument quite simply is not persuasive. While the courts will be called upon to give meaning and content to the phrase "failed to reasonably cooperate in expediting the action," it is manifest that the phrase will not be construed so as to encompass nonfrivolous assertions of legal rights. Pharmachemie had a right not to be sued in federal court in Maryland if it "could not be subject to the jurisdiction of a court of general jurisdiction…" in Maryland. *See* Rule 4(k)(1)(A), Fed.R.Civ.P. Additionally, Pharmachemie had a right under the Due Process Clause of the Constitution not to be sued in a district in which there was no personal jurisdiction over it. In using the phrase "failed to reasonably cooperate in expediting the action," Congress could not have meant that a party, in order "to reasonably cooperate in the action," must give up the right to challenge the jurisdiction of the Court over it.

The issue would be quite different if the assertion of legal rights was frivolous or a violation of Rule 11, Fed.R.Civ.P. But in the instant case, Pharmachemie was ultimately *successful* in its challenge to the assertion of personal jurisdiction over it in Maryland, and consequently the action was transferred to Massachusetts.

In the end, on the record in the instant case, if Zeneca seeks to maintain the status quo after the 30–month bar expires, it must seek and obtain a preliminary injunction. *See* 21 U.S.C. § 355(j)(5)(B)(iii)(III).

### IV.  Recommendation

For the reasons stated, I RECOMMEND that Zeneca's Motion To Extend The 30–Month Bar (# 66) be DENIED.

### V.  Review by the District Judge

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to this report and these recommendations must file a written objection thereto with the Clerk of this Clerk within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review. *See Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980); *United States v. Vega,* 678 F.2d 376, 378–379 (1 Cir., 1982); *Scott v. Schweiker,* 702 F.2d 13, 14 (1 Cir., 1983). *See also Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

July 8, 1998.