DEY, L.P.

v.

IVAX PHARMACEUTICALS, INC.

No. SACV 04–0079CJCFMOX.

United States District Court,
C.D. California.

Nov. 10, 2005.

William A. Alper, Julia S. Kim, Cohen, Pontani, Lieberman & Pavane, New York City, Robert A. Seldon, Seldon & Scillieri, Los Angeles, CA, for defendant Eon Labs, Inc.

PROCEEDINGS: (IN CHAMBERS) OR-
DER GRANTING DEFENDANTS'
MOTION TO SHORTEN THE 30–
MONTH STATUTORY STAY OF AP-
PROVAL OF EON LABS, INC.'S AB-
BREVIATED NEW DRUG APPLICA-
TION UNDER 21 U.S.C.
§ 355(j)(5)(B)(iii) [filed 9/22/05]; DE-
NYING IVAX PHARMACEUTICALS,
INC.'S MOTION TO PRECLUDE
DEY, L.P. FROM WAIVING PRIVI-
LEGE AND INTRODUCING EVI-
DENCE SUPPORTING ADVICE OF
COUNSEL DEFENSE [filed 9/19/05];
GRANTING DEY, L.P.'S MOTION
FOR AN ORDER ESTABLISHING
THE SCOPE OF PLAINTIFF'S AT-
TORNEY–CLIENT PRIVILEGE AND
WORK PRODUCT IMMUNITY
WAIVER [filed 9/20/05]; AND DENY-
ING WITHOUT PREJUDICE DEY,
L.P.'S MOTION TO EXCLUDE THE
EXPERT REPORTS OF SAMMY
CAMPBELL AND MARK BARRETT
AND TO LIMIT THE TESTIMONY
OF RICHARD DALBY AND GER-
ALD SMALDONE [filed 10/11/05]

CARNEY, District Judge.

Before the Court are four motions filed by the litigants in *Dey. L.P. v. Ivax Pharmaceu-* *ticals,* SACV 04–0079 CJC (FMOx) and *Dey, L.P. v. Eon Labs, Inc.,* SACV 04–00243 CJC (FMOx) which the Court has consolidated for discovery purposes. As the motions address overlapping subject matter and Defendants Ivax Pharmaceuticals, Inc. ("Ivax") and Eon Labs, Inc. ("Eon") have both made filings as to some of them, the Court rules on all four motions in this Order.

### A. Eon's Motion to Shorten the Statutory 30–Month Stay on FDA approval of Eon's Abbreviated New Drug Application

Eon moves for an order pursuant to 21 U.S.C. Section 355(j)(5)(B)(iii) terminating the 30–month statutory stay of approval of Eon's Abbreviated New Drug Application. Because, as explained below, Dey has unreasonably failed to expedite this litigation, Eon's motion is GRANTED.

#### 1. The Statutory Framework

The Drug Price Competition and Patent Term Restoration Act, or "Hatch Waxman Amendments" to the Federal Food, Drug and Cosmetic Act, set forth in 21 U.S.C. Sections 355, and 360cc, and 35 U.S.C. Sections 156 and 271, allows a manufacturer that seeks to market a generic drug to submit to the FDA an Abbreviated New Drug Application, ("ANDA"), concerning the generic drug's safety and efficiency. *Andrx Pharmaceuticals, Inc. v. Biovail Corp.,* 276 F.3d 1368, 1371 (Fed.Cir.2002); 21 U.S.C. § 355(j). By filing an ANDA, the generic manufacturer avoids the need to submit a full New Drug Application for the product, and may instead rely on safety and efficacy studies previously submitted to the FDA by the pioneer manufacturer by submitting information showing the generic drug's bioequivalence to the listed drug. *Andrx,* 276 F.3d at 1371; 21 U.S.C. § 355(j)(2)(A).

A pioneer manufacturer that holds a New Drug Application ("NDA") must notify the FDA of all patents that "claim[ ] the drug for which the [NDA] applicant submitted the application ..." 21 U.S.C. § 355(b)(1); (c)(2).

These patents are listed in the FDA's Approved Drug Products with Therapeutic Equivalence Evaluations, or the "Orange Book." *Andrx,* 276 F.3d at 1371.

A generic manufacturer infringes a patent by filing an ANDA to obtain approval for a generic drug product claimed by a valid and unexpired patent. 35 U.S.C. § 271(c)(2). Thus, in order to obtain an ANDA the generic manufacturer must certify as to each patent listed in the Orange Book that contains the drug product for which it seeks the ANDA that (I) such patent information has not been filed; (II) the patent has expired, (III) the date on which the patent will expire; or (IV) the patent is invalid or will not be infringed by the manufacture, use, or sale of the new generic drug for which the ANDA is submitted. 21 U.S.C. § 355(j)(2)(A)(vii)(I-IV). When the generic manufacturer makes a certification pursuant to subpart (IV)—i.e. that the patent is invalid and will not be infringed by the generic drug's manufacture, use, or sale—the ANDA applicant must notify the NDA holder and explain the basis for its subpart IV certification. 21 U.S.C. § 355(j)(2)(B)(i); 21 C.F.R. 314.95(c)(6). If the NDA holder sues the ANDA applicant for patent infringement within 45 days of the notification, the FDA may not approve the ANDA until the earlier of thirty months *after the patentee's receipt of notice,* expiration of the patent, or resolution of the suit. 21 U.S.C. § 355(j)(5)(B)(iii). The court in which the infringement suit is pending may, however, lengthen or shorten the stay if "either party to the action fail[s] to reasonably cooperate in expediting the litigation." *Id.* As Eon made a subpart IV certification and Dey sued Eon within the 45 day time period, the 30–month stay is now in effect. Eon seeks, however, to have this Court terminate the stay due to Dey's alleged failure to expedite this suit.

**2. Dey's Failure to Expedite the Litigation**

■ Eon argues Dey has failed reasonably to cooperate in expediting this litigation by: (1) waiting until after the close of fact discovery to assert its advice of counsel defense to Eon's inequitable conduct counterclaim, even though Dey had been on notice of that counterclaim since Eon filed its Third Amended Answer in August 2004, (2) concealing the existence of studies conducted in November 2003 and May 2005 comparing DuoNeb to Combivent products, (3) failing to reveal the identity of the inventor of DuoNeb, and submitting to the USPTO and withdrawing a petition to correct inventorship of the '842 patent, and (4) waiting to waive attorney client privilege and work product immunity until June 2005, after the close of fact discovery.

The Court agrees with Eon on points (2) and (3). Dey has unreasonably drawn out discovery in this case by repeatedly changing its position on inventorship—a key issue in any patent case. *See* 35 U.S.C. § 102(f) (a person is not entitled to a patent if "he himself did not invent the subject matter sought to be patented"). Not only has Dey filed and withdrawn a petition to add Mr. Rice as an·inventor, without revealing its bases for doing so, but Dey recently announced, after the close of fact discovery, that it does not even plan on taking a position on inventorship until the conclusion of the evidence in this case. According to Dey, it now plans to ask the Court, at the conclusion of evidence, to add Dr. John Siebert as an inventor and remove Dr. Partha Banerjee as a co-inventor. (Dey's Case Status Report, August 8, 2005, ¶ 3.) This late disclosure of Dey's position that Dr. Siebert is a possible inventor, after fact discovery had closed and after the point that Defendants could depose him with knowledge that Dey viewed him as a possible inventor, is questionable and prejudicial to Defendants.[1] At the very least,

---

1. The Court acknowledges Dey's position that it did not withhold the underlying facts regarding Dr. Siebert's role in inventing the subject matter claimed in the '842 patent, and that Defendants in fact deposed Dr. Siebert during fact discovery. However, the fact that Dey waited until after fact discovery closed to reveal its position that Dr. Siebert was a possible inventor is prejudicial to

Defendants because it prevented them from learning Dey's litigation position in time to depose Dr. Siebert with that position in mind. Defendants likely would have asked different questions of Dr. Siebert had they known during his deposition that Dey considered him a possible inventor.

Dey's newly-asserted position on inventorship will delay this litigation by making it necessary for Defendants to take a late supplemental deposition of Dr. Siebert. Dey's failure to have a clearer understanding on the identity of the actual inventors of the subject matter claimed in the '842 patent, which it has held and profited from for years, is very troubling and raises questions regarding its ownership rights under that patent.

Dey argues that it acted reasonably in filing and withdrawing its petition to correct inventorship before the PTO, and in stating its intention to move to correct inventorship at the conclusion of the evidence in this case. According to Dey, it was merely acting forthrightly and attempting to remedy errors that came to light based on facts revealed in discovery. Dey cites 35 U.S.C. Section 256 for the proposition that it is entitled to wait until after evidence has been presented at trial to make its final determination on inventorship, and then to move to correct it. 35 U.S.C. Section 256 provides:

> Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.

> The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The Court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the

Director shall issue a certificate accordingly.

35 U.S.C. § 256.

 Dey attempts to use 35 U.S.C. Section 256 to justify its refusal to take a clear position on inventorship before trial. The Court believes this oversteps Section 256's bounds. While Section 256 does allow for correction of innocent mistakes as to inventorship based on new information, the Court has not found (and Dey does not cite) any authority for the proposition that a party may, before trial even begins, rely on Section 256 to avoid taking a litigation position on inventorship based on the facts then known to it. To interpret Section 256 so broadly would frustrate the fundamental principle that "discovery is mutual ... while a party may have to disclose his case, *he can at the same time tie his opponent down to a definite position.*" *Hickman v. Taylor*, 329 U.S. 495, 508 n. 8, 67 S.Ct. 385, 91 L.Ed. 451 (1947) (emphasis added) (quoting Pike and Willis, *Federal Discovery in Operation*, 7 U. CHI. L. REV. 297, 303).[2] Indeed, one of the basic purposes of the discovery rules is "to narrow and clarify the basic issues between the parties." *Id.* at 501, 67 S.Ct. 385. Such clarification could never occur if a party could rely on a provision permitting post-hoc correction of innocent mistakes in inventorship to refuse to take a position on inventorship until after the close of the evidence. Defendants were entitled to know Dey's position on inventorship during fact discovery so that they could ask Dey to state the facts on which it intended to rely to support its position at trial. To use 35 U.S.C. Section 256 as Dey attempts to do here constitutes a failure reasonably to cooperate in expediting the litigation.[3]

In addition, Dey fails to provide any justification other than inadvertence for its failure

---

**2.** Dey's reading of Section 256 also is in tension with the fact that parties in patent cases have an "affirmative duty to 'reasonably cooperate in expediting the action,'" under 21 U.S.C. Section 355(j)(5)(B)(iii). *See Zeneca Limited v. Pharmachemie B.V.*, 16 F.Supp.2d 112 (D.Mass.1998) (noting that 21 U.S.C. Section 355(j)(5)(B)(iii) imposes such an "affirmative duty").

**3.** Dey cites *Glaxo, Inc. v. Torpharm, Inc., et al.*, 1997 WL 535090 (N.D.Ill. Aug. 22, 1997) for the

proposition that it cannot have unreasonably failed to expedite this litigation because it filed its complaint within the statutory period, complied with all discovery requests, and produced hundreds of thousands of pages of documents in this litigation. (Dey's Opposition, p. 10). *Glaxo*, however, is inapposite as it does not address a situation where, as here, the plaintiff has refused to take a position on a key issue in the case prior to trial. *Id.*

to produce in discovery documents relating to a study it conducted in 2003 comparing DuoNeb to Combivent MDI, which Defendants characterize as prior art to the '842 patent and on which they say they will rely to prove patent invalidity. (Eon's Memorandum, p. 4.) Although Dey has had the study since before this litigation began, Dey waited until July 21, 2005 to disclose documents related to it. Dey's delayed production of these materials, when invalidity is a central issue in this case, constitutes further unreasonable failure to expedite this litigation. *See Eli Lilly and Co. v. Zenith Goldline Pharmaceuticals, Inc.*, 58 U.S.P.Q.2d 1543, 1544 (S.D.Ind.2001) (granting plaintiff's motion for an extension of the statutory stay on FDA approval of defendant's ANDA where defendant failed to meet the case management deadline for serving its expert witness reports on the issue of invalidity, the central issue in the case).

**B. Ivax's Motion to Preclude Dey from Waiving Privilege and Introducing Evidence to Support its Advice of Counsel Defense to Ivax's Inequitable Conduct Counterclaim**

 Ivax moves to preclude Dey from waiving privilege and introducing evidence supporting its alleged advice of counsel defense. Federal Courts have the power to impose sanctions for abuse of discovery pursuant to the Federal Rules of Civil Procedure and courts' inherent power to impose discovery sanctions. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); Fed.R.Civ.P. 37. Federal Rule of Civil Procedure 37 allows a court to preclude a party from introducing evidence at trial, at a hearing, or on a motion where that party has, without substantial justification, failed to disclose required information in discovery or to amend a prior discovery response as required by Rule 26(e)(2). Fed.R.Civ.P. 37(c)(1). In determining whether to preclude introduction of evidence pursuant to Federal Rule of Civil Procedure 37, courts consider (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence, and (5) the nondisclosing party's explanation for it failure to disclose the evidence. *See Southern States Rack & Fixture, Inc. v. Sherwin–Williams Co.*, 318 F.3d 592 (4th Cir.2003).

Although, as discussed above, Dey has acted unreasonably regarding the issue of inventorship, the *Sherwin–Williams* factors weigh against precluding Dey from introducing evidence relating to its advice of counsel defense to inequitable conduct. First, Ivax would not be surprised by Dey's introduction of evidence regarding its reliance on advice of counsel in determining whether to disclose to the PTO information regarding Combivent and/or other combination medications. At some point prior to May 2005, Ivax knew it intended to amend its answer to assert new inequitable conduct allegations.[4] Also, Dey informed Ivax prior to June 23, 2005, more than a month before the August 1, 2005 fact discovery cutoff, that it might assert the advice of counsel as a defense to Ivax's inequitable conduct counterclaim. (Ochoa Decl., ¶ 7.) Dey then told Ivax in a letter dated June 30, 2005, that it proposed to waive the attorney-client privilege as to "communications and work product privilege relating to specific issues raised by defendants in their inequitable conduct allegations." (*Id.*; Exh. G thereto.) As of June 30, therefore, Ivax knew that Dey wished to waive the attorney-client privilege as to certain documents, and still had approximately one month of discovery left in which to take new depositions, retake old depositions, and/or view previously-privileged documents based on the new waiver. Dey offered "immediately [to] produce the currently privileged documents" and to "cooperate in scheduling any additional discovery." (Ochoa Decl., ¶ 7; Exh. G thereto.)

The second factor, the ability of the proponent of sanctions to cure the surprise, also weighs against preclusion. Ivax had the opportunity, before August 1, to cure any surprise that could stem from Dey's proposed

---

4. Ivax filed its Third Amended Answer on May 2, 2005, and its Fourth Amended Answer on June 3, 2005. (Court's Docket, Nos. 61, 64)

waiver of the attorney-client privilege by agreeing to the waiver and scheduling new discovery in response thereto. Ivax also presumably could have asked Dey to stipulate to an extension of the discovery deadline if it considered the time remaining before the discovery cutoff insufficient. The fact that Ivax failed for almost two weeks to respond to Dey's letter describing its proposed limited waiver indicates that Ivax failed to act promptly in addressing any perceived prejudice or surprise from Dey's waiver or introduction of evidence relating to advice of counsel. (Morris Decl., ¶ 19; Exh. N thereto.) For similar reasons, the third factor—the likelihood that introduction of evidence will disrupt the trial—also supports waiver. Indeed, as Dey's proposed waiver relates to the very issues set forth in Ivax's inequitable conduct counterclaim, introduction of evidence relating to advice of counsel as to those issues likely will be relevant and probative.

The final two factors—the importance of the evidence and the proponent's explanation for failure to offer it earlier—also weigh against preclusion. First, the evidence likely will be important to defend against Ivax's inequitable conduct counterclaim to the extent Dey contends it relied on the advice of counsel in determining whether or not to file given documents regarding Combivent with the U.S. Patent and Trademark Office in connection with the 657 Application and Petition to Make Special. It will also be highly relevant to the extent it bears on Dey's reasons for filing and withdrawing the petition to correct inventorship.

Second, the Court cannot say that Dey acted unreasonably in waiting until June 2005 to propose its limited privilege waiver to the extent Dey did so in response to new allegations in Ivax's amended pleading. Although Eon made allegations of inequitable conduct in its Third Amended Answer and Counterclaims filed in August 2004, the counterclaim as set forth therein did not relate to the same prior art products discussed in Ivax's Fourth Amended Answer filed in June 2005: whereas Eon's Third Amended Answer referred only to Dey's "albuterol sulfate inhalation solution 0.83% and its ipratropium

bromide inhalation solution (0.5 mg/2.5 ml)," Ivax's Fourth Amended Answer referred to "combination albuterol/ipratropium therapies," and Combivent in particular. (Morris Decl., ¶¶ 14–16(a); Exhs. I, J thereto.) Before Ivax filed its Fourth Amended Answer, Dey did not consider it necessary to waive the attorney-client privilege because the inequitable conduct allegations in the operative pleadings did not relate to combination therapies. *Id.* Dey plausibly alleges that it believed the allegations relating to the albuterol or ipratropium products in the pleadings prior to Ivax's Fourth Amended Answer were not material because that prior art "would have been included in the most pertinent prior art already before the Examiner during the prosecution of the patents-in-suit." (Morris Decl., ¶ 16(a).)

For the foregoing reasons, the Court declines to preclude Dey from waiving attorney-client privilege or work product immunity.

### C. Dey's Motion for an Order Establishing the Scope of Dey's Attorney–Client Privilege and Work Product Immunity Waiver

The Court rules on Dey's motion for an order establishing the scope of Dey's Attorney–Client Privilege and Work Product Immunity Waiver as follows: Except for attorney-client communications between Dey and its trial counsel, Hennigan, Bennett & Dorman ("HBD"), and except for HBD's work product, Dey and its counsel waive all attorney-client communication and work product pertaining to the '842 patent, including inventorship, patentability, validity, and/or prosecution. With respect to attorney-client communications between Dey and HBD, and HBD's work product, Dey and HBD waive such communication and work product insofar as it pertains to inventorship. Without limiting the generality of the foregoing, Dey and HBD waive attorney-client communication and work product relating to the filing and withdrawal of the petition to correct inventorship.

### D. Dey's Motion to Preclude Expert Testimony

■ Dey's motion to exclude the expert reports of Sammy Campbell and Mark Bar-

rett, and to limit the testimony of Richard Dalby and Gerald Smaldone, is DENIED without prejudice to Dey's right to object at trial to questions posed to these witnesses. To the extent any of the witnesses attempt to testify at trial based on technical and scientific information that is publicly available to all experts in the field, their testimony is admissible as expert testimony pursuant to Federal Rules of Evidence 702 and 703. To the extent their testimony is based on facts not available to the public and not disclosed during fact discovery in this case, however, it is improper. The Court will rule accordingly at trial, in response to specific objections during the questioning of these witnesses.

## E. Conclusion

For the foregoing reasons, Eon's motion to shorten the 30–month statutory stay is GRANTED. Ivax's motion to preclude Dey from waiving attorney-client privilege and work product immunity, and introducing evidence supporting its advice of counsel defense, is DENIED. The scope of Dey's waiver is as set forth above in section (C) of this Order. Dey's motion to exclude expert reports and limit witness testimony is DENIED without prejudice.