*1352 PROST, Circuit Judge,
dissenting.
The thirty-month stay described in 21 U.S.C. § 355(j)(5)(B)(iii) may be extended for one reason and one reason only: “because either party to the action failed to reasonably cooperate in expediting the action.” Because I believe that the majority misapplies the law and misapprehends the facts in affirming the district court, I respectfully dissent.
I
The question here is one of statutory construction, which we review de novo. Although the majority is correct in that a district court’s decision to issue a stay is generally reviewed for abuse of discretion, see, e.g., Cherokee Nation v. United States, 124 F.3d 1413, 1416 (Fed.Cir.1997), the power to issue a stay in most cases arises under district courts’ “broad discretionary powers to control their dockets,” Gould v. Control Laser Corp., 705 F.2d 1340, 1341 (Fed.Cir.1983). Where, as here, the stay is explicitly tied to a statutory standard, that standard must be properly construed. See In re Princo Corp., 478 F.3d 1345, 1353-55 (Fed.Cir.2007) (construing a statute that requires a stay by reference to dictionaries and legislative history, among other things). In the past, we have recognized that interpretation of the stay provided in 21 U.S.C. § 355(j)(5)(B)(iii) is a question of law reviewed without deference. Andrx Pharm., Inc. v. Biovail Corp., 276 F.3d 1368, 1375 (Fed.Cir.2002). In Andrx, Biovail appealed a district court’s decision to grant partial summary judgment, shortening the thirty-month stay and requiring the Food and Drug Administration (“FDA”) to approve Andrx’s Abbreviated New Drug Application (“ANDA”). We stated that “[interpretation of statutes governing the grant of summary judgment presents threshold questions of law that are reviewed without deference,” then proceeded to do just that, ultimately vacating and remanding. Id.
But even under an abuse of discretion standard, the district court’s decision should not stand. Let us be clear about what the district court “found.” The district court never made any finding related to the statutory standard, i.e., whether Teva reasonably cooperated in expediting the action. The court briefly described the background of the case and the parties’ relative positions, and noted that the magistrate judge had ordered Teva to produce various documents prior to August 18, 2008. Although Teva did not complete production until September 5, 2008, the court did not purport to base any finding that Teva “failed to reasonably cooperate in expediting the action” on this eighteen-day delay. Instead, the court’s findings were limited to the following:
As this Court observed in its order granting a limited extension of the statutory stay in Eli Lilly & Co. v. Barr Laboratories, Inc., it appears “important, perhaps essential, that the composition of the generic drug product for which FDA approval is being sought ... and which Lilly alleges to be the infringing product should be definitively established.” That proposition similarly applies here. In light of the fact that Teva has recast its product more than eighteen months after it provided the original sample to Lilly and only eight months before trial is set to commence, we find that, in preparation for trial, Lilly is entitled to have a sufficient opportunity to identify the nature and composition of the raloxifene product as Teva intends for it to be sold.
Teva argues that the circumstances in [Barr ] are distinguishable from the situation at hand because the defendant in Barr had failed to provide Lilly with even one sample of its generic drug product, whereas here, on December 12, 2006, Teva provided Lilly with its original raloxifene sample, and has since pro *1353 duced to Lilly three samples of the altered product (the first on July 28, 2008, the second on August 19, 2008, and the third on September 17, 2008). Therefore, Teva contends that an extension of the statutory stay here is unnecessary because it has fully disclosed all the required information to Lilly in an expeditious fashion. Although Teva correctly cites the factual differences between the case at bar and the situation in Barr, those differences are not viewed by us as determinative on this issue. In Barr, we did not simply extend the statutory stay through the date on which the defendant produced a sample of its product to Lilly. Instead, our order provided that, after the defendant produced the sample, the stay would extend through “a reasonably expeditious time period for preparing for trial.”
A similar extension is warranted here in order to provide Lilly with a reasonable amount of time to allow its expert to test and report on the altered raloxi-fene samples provided by Teva and for Lilly to assess and utilize that information and analysis in preparation for trial, which is set to commence on March 9, 2009. For the foregoing reasons, the Court hereby EXTENDS until March 9, 2009, in this action the period under 21 U.S.C. § 355(j)(5)(B)(iii) during which the FDA is barred from approving ANDA No. 78-193.
Eli Lilly & Co. v. Teva Pharm. USA, Inc., No. 1:06-CV-1017, 2008 WL 4809963, at *2 (S.D.Ind. Oct. 29, 2008) (citations and footnotes omitted) (“Order Extending Stay ”). Not once in this order did the court indicate, much less unambiguously state, that it found Teva had failed to reasonably cooperate in expediting the action.[1] The court provided at most two justifications for extending the stay: (1) to provide Lilly “a sufficient opportunity to identify the nature and composition of the raloxifene product as Teva intends for it to be sold,” and (2) to give Lilly “a reasonable amount of time to allow its expert to test and report on the altered raloxifene samples provided by Teva and for Lilly to assess and utilize that information and analysis in preparation for trial.” Id. Neither of these reasons remotely resembles the statutorily required finding.
It is clear from the record, in my view, that the district court never related Teva’s conduct to the statutory standard. But even if the court had made a conclusory statement regarding Teva’s cooperation, that alone would not suffice. In Gechter v. Davidson, we clarified that although “we review decisions, not opinions,” a district court opinion “must contain sufficient findings and reasoning to permit meaningful appellate scrutiny.” 116 F.3d 1454, 1458 (Fed.Cir.1997). We went on to state the following:
A district court therefore may not merely state its findings in conclusory terms, but must provide sufficient detail to elucidate the reasoning by which the court reached its ultimate finding on an issue of fact or conclusion on an issue of law; otherwise, the appellate court is unable to carry out its appellate review function. Indeed, as to the facts it must also find subsidiary facts “specially,” and not just the ultimate fact, here of anticipa *1354 tion. If it fails to do so, its decision will ordinarily be vacated.
Id. In fact, in Nazomi Communications, Inc. v. Ann Holdings, PLC, our court vacated a district court’s claim construction, an issue that we examine de novo, stating,
This court’s review of a district court’s claim construction, albeit without deference, nonetheless is not an independent analysis in the first instance. Moreover, in order to perform such a review, this court must be furnished “sufficient findings and reasoning to permit meaningful appellate scrutiny.” This requirement for sufficient reasoning applies with equal force to issues of law, such as claim construction, and issues of fact, such as infringement.
... Unlike Gechter and Graco, where the records were devoid of any claim construction analysis, the district court in this case provided some claim construction analysis. Nonetheless this analysis is inadequate because it does not supply the basis for its reasoning sufficient for a meaningful review.
403 F.3d 1364, 1371 (Fed.Cir.2005) (citing Gechter, 116 F.3d at 1458; Graco, Inc. v. Sinks Mfg., 60 F.3d 785, 791 (Fed.Cir.1995)) (citations omitted). As in Nazomi, the district court here did not provide sufficient findings and reasoning to permit meaningful appellate scrutiny. Thus, regardless of whether we review the district court’s order de novo or for an abuse of discretion, the order should be vacated.
II
The consequences of the majority opinion are of particular importance here. Rarely have district courts had the opportunity to address the circumstances under which the thirty-month stay may be extended or shortened.[2] Those courts that have addressed the issue have recognized the statutory standard and strictly abided by it in determining whether to modify the stay. See Zeneca Ltd. v. Pharmachemie B.V., 16 F.Supp.2d 112 (D.Mass.1998); In re Brimonidine Patent Litig., No. 07-md-1866, 2008 WL 4809037 (D.Del. Oct.31, 2008); Novartis Corp. v. Dr. Reddy’s Labs., Ltd., No. 04-Civ-0757, 2004 WL 2368007 (S.D.N.Y. Oct.21, 2004); Minn. Mining & Mfg. Co. v. Alphapharm Pty. Ltd., No. CIV-99-13, 2002 WL 1299996 (D.Minn. Mar. 8, 2002); Eli Lilly & Co. v. Zenith Goldline Pharm., Inc., No. IP99-0038-C-H/G, 2001 WL 238090 (S.D.Ind. Mar.8, 2001).
Appropriate findings by the district court are especially important where, as here, Congress set forth a clear statutory timeframe and provided one narrow exception to the general rule.[3] Only once has this court examined the matter directly. In Andrx, we analyzed a single question: *1355 whether the district court had the authority to shorten the stay period based on one party’s conduct before the FDA. 276 F.3d at 1376. We expressly limited our review, declining to reach the question “whether the district court’s authority to shorten the thirty-month statutory stay is limited to those cases in which there was a failure to expedite the infringement action once it is filed or whether the authority extends as well to situations in which the infringement action was not commenced expeditiously.” Id. In short, this court has not previously provided any guidance to the district courts as to what qualifies as a “fail[ure] to reasonably cooperate in expediting the action.” To affirm in this case is to effectively eliminate the statutorily required finding, and to prematurely terminate the development of appropriate standards governing modification under 21 U.S.C. § 355(j)(5)(B)(iii).
For the foregoing reasons, I respectfully dissent.

. If anything, statements by the district court suggest that the court agreed that Teva reasonably cooperated by expeditiously "disclosing all of the required information," but extended the stay regardless. Order Extending Stay, 2008 WL 4809963, at *2. Specifically, Teva claimed that an extension of the stay was unnecessary because it fully disclosed all of the required information in an expeditious fashion. The court stated that "[a]lthough Teva correctly cite[d] the factual differences between the case at bar and the situation in Barr, those differences are not ... determinative on this issue.” Id. (emphasis added).

. Even commentators have noted that "[s]tat-utory stay adjustments have not been frequent.” Gerald Sobel el al., Hatch-Waxman Litigation from the Perspective of Pioneer Pharmaceutical Companies, in Patent Litigation Strategies Handbook 183, 196-97 (Barry L. Grossman & Gary M. Hoffman eds., 2d ed.2005).

. The legislative history indicates that the thirty-month stay was a hard-won compromise between brand-name manufacturers, generics manufacturers, and other stakeholders. The length of the stay was the subject of heated debate in the House. 130 Cong. Rec. H24426-31 (Sept. 6, 1984). Initially, the House version of the bill provided for a stay of just eighteen months. H.R. 3605, 98th Cong. § 101 (as reported by H. Comm, on the Judiciaiy, Aug. 1, 1984). The Senate version, which ultimately prevailed, described a thirty-month stay. S. 2926, 98th Cong. § 101 (1984). In light of this fact, we should be especially careful when reviewing district courts’ decisions to modify the statutory period. That period ceases to have meaning when district courts are able to modify the stay without articulating why the narrow circumstances described in the statute are present.